Isaac Rubin, J.
The defendant is charged in count 1 of the indictment with rape in the first degree, and in count 2, with sodomy in the first degree. He is also charged in two additional counts with burglary in the second degree, and petit larceny.
As a branch of his omnibus motion, he moves to dismiss the first and second counts, to wit, the charges of first degree rape and first degree sodomy, pursuant to the provisions of CPL 210.20, on the grounds that said counts are "defective” within the meaning of CPL 210.25 (subd 3) in that the statutes defining the offenses charged are unconstitutional.
The court shall consider each of these contentions separately.
(1.) Is the Rape Statute Unconstitutional?
The rape statute states in relevant part: "130.35. Rape in the first degree. A male is guilty of rape in the first degree when he engages in sexual intercourse with a female; 1. By forcible compulsion”. (Emphasis supplied.)
The defendant asserts that the statute by its singular reference to "male” treats rape as a masculine crime, and that a female can only be the victim of a rape, and not the perpetrator. He thus claims that because of his sex, the statute, by excluding from its prohibition females, abridges his constitutional right to the equal protection of the law guaranteed by the Fourteenth Amendment to the United States Constitution, *704 and section 11 of article I, of the Constitution of the State of New York.
The People contend that obvious physiological differences between men and women call for different legislative treatment, and there is clearly a rational basis for the Legislature to have limited the prohibition of this statute to males.
In considering the constitutionality of a statute, certain general rules must be applied:
The burden imposed upon one who asserts the invalidity of a legislative enactment is a heavy one, and courts strike a statute down only as a last unavoidable resort. (Matter of Pratt v Tofany, 37 AD2d 854; Matter of Van Berkel v Power, 16 NY2d 37, 40.) In Defiance Milk Prods. Co. v Du Mond (309 NY 537, 540-541) it was held: "Every legislative enactment carries a strong presumption of constitutionality, including the rebuttable presumption of the existence of necessary factual support for its provisions (Borden's Co. v Baldwin, 293 US 194, 209, 210). If any state of facts, known or to be assumed, justify the law, the courts’ power of inquiry ends (United States v Carolene Products Co., 304 US 144, 154). Questions as to wisdom, need or appropriateness are for the Legislature (Olsen v Nebraska, 313 US 236, 246). Courts strike down statutes only as a last resort (Matter of Ahern v South Buffalo Ry. Co., 303 NY 545, 555, affd. 344 US 367) and only when unconstitutionality is shown beyond a reasonable doubt (Lindsley v Natural Carbonic Gas Co., 220 US 61, 79; Matter of Fay, 291 NY 198, 206, 207). But, for all that, due process demands that a law be not unreasonable or arbitrary and that it be reasonably related and applied to some actual and manifest evil. (Matter of Jacobs, 98 NY 98, 110; Fisher Co. v Woods, 187 NY 90; Nebbia v New York, 291 US 502.)” (See, also, Matter of Pratt v Tofany, supra.)
Additionally, a court of original jurisdiction as is this court, should not set aside a statute as unconstitutional except in the rare instance where life and liberty are involved and the invalidity of the statute is apparent on its face (National Psychological Assn. For Psychoanalysis v University of State of N. Y., 18 Misc 2d 722, 725-726; affd 10 AD2d 688; affd 8 NY2d 197; app dsmd 365 US 298), or the conclusion is inescapable (People v Elkin, 196 Misc 188; Bohling v Corsi, 204 Misc 778; affd 306 NY 815). Otherwise, such constitutional question should be left for the appellate courts (City of New Rochelle v *705 Echo Bay Waterfront Corp., 182 Misc 176; affd 268 App Div 182; affd 294 NY 678).
The Fourteenth Amendment to the Federal Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws.” Essentially similar is the language of section 11 of article I of the New York Constitution, which states that "No person shall be denied the equal protection of the laws of this state or any subdivision thereof.” The breadth of coverage afforded in this respect by the two constitutions is equal. (Dorsey v Stuyvesant Town Corp., 299 NY 512, cert den 339 US 981; 9 NY Jur Constitutional Law, § 287.)
The concept of equal protection of the laws has not been, and is not, susceptible to precise definition. No hard and fast rules have been laid down, and each situation must be judged on its merits on an "ad hoc” basis, in accordance with the above broad principles. In short, no test has been formulated which is infallible or all inclusive, and each case must be decided as it arises (Puget Sound Co. v King County, 264 US 22; Louisville Gas Co. v Coleman, 277 US 32; O’Kane v State of New York, 283 NY 439). Generally speaking, however, the essence of the right to equal protection of the laws is that all persons similarly situated be treated alike, and that no person or class of persons shall be denied the equal protection of the laws which is enjoyed by others in like circumstances (Kentucky Finance Corp. v Paramount Auto Exch. Corp., 262 US 544). Stated differently, the rule is that the equal protection of the laws is not denied when all persons in the same class are treated alike under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed (Matter of Sacharoff v Corsi, 294 NY 305, 312, cert den 326 US 744; 9 NY Jur, Constitutional Law, § 297, p 199).
In applying the Equal Protection Clause, it has been consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways as long as the classification is reasonable. (Reed v Reed, 404 US 71, 75; Einsentadt v Baird, 405 US 438; Farrington v Pinckney, 1 NY2d 74.) However, classifications based upon sex, like classifications based upon race and national origin, are inherently suspect and must, therefore, be subjected to close judicial scrutiny (Reed v Reed, supra, p 75; Frontiero v Richardson, 411 US 677, 690). But, a legislative classification will not be set aside if related to the objective of *706 the statute, and if any state of facts rationally justifying it is demonstrated, or can be conceived to support it, or perceived by the courts. (United States v Maryland Sav. Share Ins. Corp., 400 US 4; Dandridge v Williams, 397 US 471.)
In West Coast Hotel Co. v Parrish (300 US 379, 400), the United States Supreme Court restated the familiar principle which has repeatedly been applied to legislation which singles out women, or particular classes of women, in the exercise of the State’s protective power. It reiterated the parameters within which the Legislature may work in dealing with the Equal Protection Clause, as follows: "The argument that the legislation in question constitutes an arbitrary discrimination, because it does not extend to men, is unavailing. This Court has frequently held that the legislative authority, acting within its proper field, is not bound to extend its regulation to all cases which it might possibly reach. The legislature 'is free to recognize degrees of harm and it may confine its restrictions to those classes of cases where the need is deemed to be clearest.’ If 'the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied.’ There is no 'doctrinaire requirement’ that the legislation should be couched in all embracing terms.”
The test is not whether some inequality results from the classification (Lindsley v Natural Carbonic Gas Co., 220 US 61), but whether there exists any reasonable basis to justify the classification (McGowan v Maryland, 366 US 420).
Now, to sustain the defendant’s contention, this court must assume that the classification implicit in the statute is unreasonable, but the court may not make such an assumption. The heavy burden is upon the defendant claiming that the classification is unreasonable and irrational to support that contention with facts which will overcome the presumption of constitutionality.
Defendant has only advanced argument to support his contention. The bare record herein does not support the facts upon which the contention rests. Additionally, there is nothing in this record upon which this court can rely to conclude, as argued by defendant, that rape by females is a criminal problem of any importance. This court may not assume that rape by females is a problem of such significance that the Legislature should proscribe the practice as a crime.
That, for practical purposes, only females may be raped is a *707 physiological reality, and it is equally clear that the object of the statute is to protect them from that eventuality.
The constitutional question presented at bar has been considered, and similar statutes sustained, by the highest courts of several States.
In State v Kelly (111 Ariz 181, 184), the court held:
"In the instant case, we believe that the need for treating males and females differently in enacting the rape statute is clearly reasonable. The statute satisfies the real, if not compelling, need to protect potential female victims from rape by males.
"However, for obvious physiological as well as sociological reasons we perceive no need by males for protection against females from rape which would be sufficient to demand legislative attention. The fact that the law does not provide the same protection to males as it does to females does not deny the male perpetrator the equal protection of the law. The classification is logical and rational. The individual’s as well as the government’s interests are apparent. We do not find the statutes constitutionally infirm.”
In considering the same constitutional contention, the Supreme Court of Wisconsin, in State v Ewald (63 Wis 2d 165, 173-174) stated: "The sex classification is reasonable and bears a fair and substantial relationship to the object of the law. Sec. 944.01 is intended to protect women against sexual attack and forced pregnancy. We do not' feel called upon to engage in a dissertation of the physiological, medical, sociological and moral problems as they relate to a woman subjected to such a possible pregnancy and those same problems as they relate to a potentially unwanted child”. (To the same effect: see People v Gould, — Col —, 532 P 2d 953; People v Medrano, 24 Ill App 3d 429; Brooks v State, 24 Md App 334.)
Similar constitutional contentions raised to invalidate prostitution statutes have been rejected, and the. courts have found that differences between the sexes bear a rational relationship to the prohibition of prostitution by females, and excluding males. (State v Devall, 302 So 2d 909 [La]; State v Mertes, 60 Wis 2d 414; State v Griffin, 226 Ind 279; Wilson v State, 258 Ind 3.)
In the opinion of this court, the protection of females from rape is a legitimate and essential legislative objective. Since only males can physiologically perpetrate that crime, then the *708 limitation of culpability to males constitutes a rational classification directly related to the objective of the criminal penalty. Clearly, the usual sordid state of facts in a rape situation rationally justify the sex classification by singling out males in the statute.
As already pointed out, supra; a legislative classification will not be set aside if any state of facts rationally justifying it is demonstrated to, or perceived by, the courts (United States v Maryland Sav. Share Ins. Corp., 400 US 4, 6, supra; Dandridge v Williams, 397 US 471, supra).
In a recent opinion, the United States Supreme Court held that, consistently with the Equal Protection Clause, a State "may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind * * * so long as the line drawn by the State is rationally supportable, the courts will not interpose their judgment as to the appropriate stopping point.” And, quoting from Dandridge v Williams (supra), the court said: "The Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all.” (Geduldig v Aiello, 417 US 484, 495.)
The equality of the sexes expresses a societal goal, and not a physical metamorphosis (Brooks v State, 24 Md App 334, supra). While the classification herein is made on the basis of sex, and while this court is loathe to condone the continuance of sexual discrimination, the court concludes that the classification bears a fair, reasonable and substantial relationship to the object of the rape statute. All persons similarly classified are treated alike, and the statute does not violate the Equal Protection Clause of either the New York or United States Constitutions.
While this court holds that, under section 130.35 of the Penal Law, only a male can be a perpetrator of the crime of rape, nevertheless, a female can be guilty of a violation of the rape statute, and be punished thereunder, as an aider or abettor to a male perpetrator.
It is an established rule of law that a person may be guilty )f committing an offense by being an aider or abettor or a party to a conspiracy even though unable to commit the crime itself. (Cf. 22 CJS, Criminal Law, § 85, p 250.) And, a person who aids, abets, or assists in the commission of the crime of rape may be convicted as a principal under the statutes in many jurisdictions, and be punished equally with the actual *709 perpetrator of the offense (65 Am Jur 2d, Rape, § 28, p 776; People v Medrano, 24 Ill App 3d 429, supra; State v Ewald, 63 Wis 2d 165, supra; State v Carter, 66 Ariz 12).
In New York, this is equally true by virtue of section 20.00 of the Penal Law, which provides that when one person engages in conduct constituting an offense, another person is criminally liable for such conduct, when acting with the same mental culpability, he solicits, requests, commands, importunes, or intentionally aids such other person in the commission of the crime. In fact, under subdivision 3 of section 20.05 of the Penal Law it is also specifically provided that it is no defense that the crime, as defined, here rape, can be committed only by a particular class or classes of persons (males), and that the person aiding or abetting the commission (female), does not belong to that class or classes, and, therefore, is legally incapable of committing the offense in an individual capacity. Consequently, under this statute, a female may be guilty of rape in the first degree as an aider and abettor to the male perpetrator of the crime, and it is no defense, that by virtue of the express language of the statute limiting the perpetration of the crime to males, she is legally incapable of committing it.
Nor, can it be argued, as was contended as to the Wisconsin statute, in People v Ewald (supra), that in this State, the classification is arbitrary and unconstitutional because a woman can be a party to the crime under the aiding and abetting statute (Penal Law, § 20.00), but cannot be prosecuted as a perpetrator because of the exclusion of section 130.35 of the Penal Law. As the court in People v Ewald pointed out as to the Wisconsin statute, which is equally true of the New York statute, this argument ignores the fact that our aiding and abetting statute includes all persons as parties to a crime and does not exclude women. In this connection, see People v Meli (193 NYS 365), where it was held that while a husband cannot be guilty of the rape of his wife, by reason of matrimonial consent, he could be guilty as a principal in aiding or abetting the commission of the act upon his wife by another. This case has frequently been cited by the highest courts of other States for the proposition that a woman may be an aider and abettor of rape, but not a perpetrator. (See, for example, Commonwealth v Mannos, 311 Mass 94; Cody v State, 361 P 2d 307 [Okla]; cf. Annos: 5 ALR 782, 785; 74 ALR 1110; 84 ALR2d 1017, 1024.)
*710 While our laws must keep pace with the changes and demands of our society and women should be treated equally with men, nevertheless, if a more general classification is required in our rape and sex offense statutes, that is a matter for the Legislature — not for the courts. It is not the province )f the judiciary to legislate. The desirability or need for egislation is entirely for the Legislature to determine. The question of the wisdom or the appropriateness in adopting a dassification is a matter of no concern to the courts. (Defiance Milk Prods. Co. v Du Mond, 309 NY 537, 540-541, supra and cases cited; Matter of Pratt v Tofany, 37 AD2d 854, supra.) Dur rape statute has been part of our Penal Law for many years in its present limited form of classification, and the fact that each session of our Legislature convened every year has not disturbed that classification, and our appellate courts have not criticized it adversely, is persuasive of the legality of the classification.
(2.) Is the Sodomy Statute Constitutional?
Defendant contends, as to section 130.50 of the Penal Law, that it is likewise unconstitutional, and the sodomy count of the indictment should he dismissed, by reason of the fact that the defendant is discriminated against on the basis of his sex, and thus denied the equal protection of the law, under the New York State and the United States Constitutions.
The People, in opposition to the motion herein, have either ignored this contention, or have taken no position on this issue of constitutionality.
In contrast to the rape statutes (Penal Law, §§ 130.25, 130.30, 130.35) wherein a "male” is expressly specified as the perpetrator, and a "female” as the victim, the sodomy statutes m all degrees (Penal Law, §§ 130.40, 130.45, 130.50) expressly provide, insofar as pertinent, that: "A person is guilty of sodomy when he engages in deviate sexual intercourse”. (Emphasis supplied.)
Noteworthy is the substitution of the words "a person” for she words "a male.” Defendant argues, however, that in lesignating "a person” and using the male gender "he” to describe the perpetrator, that again, only a male can be convicted of the crime, although the victim of the sodomy, unlike of a rape, can be either a male or a female, and, therefore, the defendant is likewise denied the equal protection of the law.
The court cannot agree with this interpretation of the *711 sodomy statutes. The Legislature, in contradistinction to the rape statutes, deliberately used the more inclusive word "person” as the perpetrator instead of the word "male.” Furthermore, a "person” is defined in the Penal Law (§ 10, subd 7), as follows: "7. 'Person’ means a human being”.
Significantly, our General Construction Law (§ 22), requires that, as to references to gender: "Words of the masculine gender include the feminine and the neuter”. Additionally this rule of construction applies equally to the Penal Law anc the CPL since it does not amend, repeal or otherwise change any provision of these laws indicating a different meaning or application was intended (General Construction Law, §§ 101, 110). Nor, is such an interpretation in conflict with any of the specified definitions of CPL 1.20, or section 10.00 of the Penal Law, but actually is consistent with the latter (Penal Law, § 10.00, subd 7). Indeed, such construction merely gives meaning to the inclusive term "person” rather than limiting its application as contended by the defendant.
In fact, credence for this interpretation is found in section 20.00 of the Penal Law, relating to "Criminal liability for conduct of another”, where, again, identically, the actor or perpetrator is specified to be a "person”, and "another person” is criminally liable for the actor’s conduct, where "he” aids or abets the perpetrator. Yet, never, in the interpretation of this statute has it ever been held that the reference to the male gender "he” limits the culpability for aiding and abetting only to males. Without peradventure of doubt, the broad term "person”, includes females within the reach of the statute.
It follows, therefore, that any person, male or female is guilty of sodomy in the first degree [who] engages in deviate sexual intercourse with another person by any of the means specified (Penal Law, § 130.50), or who so engages, in any of the ways specified in the lesser degrees of sodomy (Penal Law, §§ 130.40, 130.45; cf. State v Mertes, 60 Wis 2d 414, supra, where a prostitution statute was so construed).
Assuming arguendo, however, as defendant contends, that only a male can be a perpetrator under our sodomy statutes, this court cannot, agree with this contention as a violation of the Equal Protection Clause, even if the sodomy statutes were so construed.
The sex classification is again reasonable and bears a fair and substantial relationship to the object of the law. The sodomy statutes are intended to protect women against devi *712 ate sexual attack and the terrible emotional trauma and physical injury which may be consequent upon such an attack. These statutes constitute a reasonable attempt to protect the well-being of its female citizens.
By a parity of reasoning with the ratio decidendi in sustaining the constitutionality of the rape statutes, the court concludes that the sodomy statutes do not violate the Equal Protection Clauses of the New York or the Federal Constitutions.
The court perceives no real or compelling need to protect potential male victims from sodomy by females which would be sufficient to demand legislative attention.
To paraphrase the United States Supreme Court in the above quote from West Coast Hotel Co. v Parrish (300 US 379, supra), the Legislature is not bound to extend its classification to all cases it might possibly reach. It is free to recognize degrees of harm, and confine its restriction where the need is clearest. When the law hits the evil most felt, it may not be overthrown because there are other situations which might have been embraced. Furthermore, absent a showing that a classification limiting sodomy to males is merely a pretext designed to effect an invidious discrimination against the members of one sex or the other, the Legislature is constitutionally free to exclude female sodomy from the coverage of the legislation on the reasonable basis that it does not constitute enough of a criminal problem for the Legislature’s cognizance. (See Geduldig v Aiello, 417 US 484, 496 n 20 supra.)
(3.) Bill of Particulars
The defendant requests, as a bill of particulars, the nature of the deviate sexual intercourse charged in the second count of the indictment. The request is denied. The information is evidentiary and must be proved as part of the People’s case. Further, the defendant has not shown how the information is necessary to prepare his defense. (People v Spina, 14 AD2d 505; People v Gaissert, 75 Misc 2d 478.)
(4.) Discovery and Inspection
The defendant next seeks, pursuant to CPL article 240, an order directing the District Attorney to disclose for discovery, by counsel for the defendant, the number of persons present in the Grand Jury room during the presentation of all of the evidence to the Grand Jury in this matter, the number of Grand Jurors present at said time, the number of Grand Jurors who voted on whether or not to find the instant *713 indictment, the number of Grand Jurors who voted in favor of the instant indictment, the number of Grand Jurors who voted against the same, and the number of Grand Jurors who abstained from voting and whether or not any person not authorized by the CPL was present in the Grand Jury room during the presentation of the evidence herein and the voting of the indictment. The reason advanced for seeking this information is to permit counsel to determine whether a motion would lie to dismiss the indictment on the ground that the Grand Jury proceedings were defective. There is no claim by the defendant that there were any irregularities, and, in effect, he seeks a "fishing expedition” in hopes of finding some. This is a far cry from the "sworn allegations of fact” necessary to support such a motion. The motion for discovery is denied.
(5.) Suppress Identification
The motion is granted only to the extent that an identification hearing will be held just prior to trial to determine whether any of the identification procedures used violated any of the defendant’s statutory or constitutional rights.
The aforesaid constitutes the decision and order on the motion.
The Calendar Clerk is directed to adjourn the determination of readiness date to January 29, 1976.