*117 OPINION OF THE COURT
Joseph Harris, J.
Defendant is charged with the crime of rape in the third degree in violation of subdivision 1 of section 130.25 of the Penal Law. Defendant moves to dismiss the indictment against him on the ground that said section violates his right to equal protection of the law guaranteed by the Fourteenth Amendment to the United States Constitution and section 11 of article I of the New York State Constitution.
Subdivision 1 of section 130.25 of the Penal Law states: "A male is guilty of rape in the third degree when: 1. He engages in sexual intercourse with a female who is incapable of consent by reason of some factor other then being less then seventeen years old”. (Emphasis added.)
Defendant contends that this section creates a constitutionally impermissible classification based on sex. He argues that since only males are subject to criminal liability under the section and only women are protected thereunder the statute constitutes an arbitrary discrimination based solely upon sex.
New York State’s rape statues in general, and this specific one in particular, are based not on sex but on physiology. They are substantially related to and reasonably tend to further important and legitimate State interests. The failure directly to include potential female violators within their confines does not violate a fundamental interest of men.[1] The classification making males susceptible to the proscriptions of these statutes but not females, was in no way intended to be, and is not in actual practice, invidious or unreasonably discriminatory. Accordingly they do not violate the mandate guaranteeing equal protection of the laws and are not unconstitutional.
Initially, it must be observed that a strong presumption of validity attaches to statutes and the burden of proving invalidity rests upon those who challenge their constitutionality to establish this beyond a reasonable doubt. (People v Scott, 26 NY2d 286; Matter of Van Berkel v Power, 16 NY2d 37.) There is a further presumption that the Legislature has investigated and found the facts necessary to support the *118 legislation. (I. L. F. Y. Co. v Temporary State Housing Rent Comm., 10 NY2d 263; People v Scatena, 63 AD2d 687; People v McNair, 46 AD2d 476.) As long as the Federal and State Constitutions are not violated, this court may not substitute its judgment of the wisdom, need or appropriateness of the statute in question for that of our duly elected Legislature. (See Defiance Milk Prods. Co. v Du Mond, 309 NY 537.)
In the only reported cases in New York addressing the constitutionality of a rape statute, courts have held constitutional subdivision 1 of section 130.35 of the Penal Law, the "forcible compulsion” section of the rape statutory scheme. (People v Wheeler, 50 AD2d 1089; People v Reilly, 85 Misc 2d 702.) The defendant argues that any rationale reflecting a greater need to protect women from forcible rape does not apply in the narrower case where lack of consent is based upon mental incapacity, as in the instant case — that in such cases there is as much reason to protect mentally incapacitated men as there is to protect mentally incapacitated women.
The equal protection clause of the Fourteenth Amendment to the United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws.” Essentially similar is the language of section 11 of article I of the New York Constitution which states that "No person shall be denied the equal protection of the laws of this state or any subdivision thereof.” The breadth of coverage afforded by the two Constitutions is equal. (Dorsey v Stuyvesent Town Corp., 299 NY 512, cert den 339 US 981; 9 NY Jur, Constitutional Law, § 287.)
The principle of equal protection does not lend itself to hard and fast rules because of the variety of subjects and situations to which it applies. Equal protection of the law does not prohibit the State from treating different classes of persons in different ways. Statutory classification for purposes of according different treatment, however, must always rest on a difference which bears a fair, substantial, natural, reasonable and just relation to the object, act, or purpose of the statute in order that all persons who are similarly situated are treated in the same way. (Reed v Reed, 404 US 71; Matter of Patricia A., 31 NY2d 83, 88; People v Ditniak, 28 NY2d 74, 78; 9 NY Jur, Constitutional Law, § 300.)
The appropriate standard for judicial review in equal protection analysis depends upon the nature of the classifica *119 tion involved and the character of the rights asserted. Under "traditional” equal protection analysis, a legislative classification will be sustained unless it is patently arbitrary and bears no rational relationship to a legitimate governmental interest. (Frontiero v Richardson, 411 US 677, 683.) This analysis recognizes that a State has vast discretion in developing classifications and categories in the exercise of its police powers. In this regard, the Supreme Court has often stated "[T]he legislature is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be clearest. If the law 'presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might be applied.’ ” (Minnesota v Probate Ct., 309 US 270, 275; West Coast Hotel Co. v Parrish, 300 US 379, 400; Senaler v Dental Examiners, 294 US 608, 610-611.)
The rational basis test described above is not appropriate for the constitutional evaluation of all statutory classifications. Where a statute affects a "fundamental interest” or employs a "suspect” classification, the "strict scrutiny” test has been applied. That test requires that the legislative purpose be so compelling as to justify the means utilized. (Alevy v Downstate Med. Center, 39 NY2d 326, 332.) Suspect classifications include race (Loving v Virginia, 388 US 1), national origin (Hernandez v Texas, 347 US 475), and alienage (Matter of Griffiths, 413 US 717). Fundamental interests include, inter alia, voting (Dunn v Blumstein, 405 US 330), travel (Shapiro v Thompson, 394 US 618), and procreation (Skinner v Oklahoma, 316 US 535).
The appropriate standard with respect to classifications based upon sex is not free from doubt. In Frontiero v Richardson (411 US 677, 688, supra) a plurality of the United States Supreme Court, but not a majority thereof, were of the view that classifications based upon sex, like classifications based upon race or national origin, are inherently suspect and must, therefore, be subjected to close judicial scrutiny. Subsequent cases, however, have made clear that legislative classifications based on sex are not viewed as inherently suspect. In the recent case of Craig v Boren (429 US 190, 197) a majority opinion evaluated a gender-based State statute with criminal implications under the rule that "classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives.” The *120 Supreme Court struck down under this standard an Oklahoma statute which prohibited the sale of 3.2% beer to males under the age of 21 while permitting such sales to females between 18 and 20 years of age. Although separate concurrences by Justice Powell and Justice Stevens make unclear whether this "middle tier” standard has majority support, it should apply to this case as the most recent Supreme Court pronouncement of the appropriate standard in gender classification cases in a criminal context. This standard is hardly precise but it is clear that it requires to some indeterminate extent more of a connection between the classification and the governmental objective than that of the minimum rationality standard. (Meloon v Helgemoe, 564 F2d 602, 604.)
 The defendant contends that the object of subdivision 1 of section 130.25 of the Penal law is to protect persons incapable of consent by reason of some mental disease or defect from exploitation through the act of sexual intercourse. Defendant argues that the statute is not substantially related to the achievement of this objective for three reasons: (1) Females are given the protection but males are not;[2] (2)
*121 Females are as capable as men of having sexual intercourse with a mentally incapacitated member of the opposite sex, yet they are not prohibited from so doing; (3) There is not, demonstrably, a greater number of potential male offenders than female offenders.
The defendant errs in his view of the purpose of the statute involved. The statute is not intended as a general statute to protect all persons mentally incapable of consent from exploitation through sexual intercourse, it is a specific statute designed to prevent nonconsensual intercourse in specially limited and narrowly proscribed cases where the physiologic consequences are fraught with dire consequences not only to the victim but to society itself. These consequences can come to pass only where the victim is female.
In this court’s view the statutory scheme of subdivision 1 of section 130.25 of the Penal law is substantially related to important governmental objectives. The possibility of unwanted pregnancy, with all of the attendant psychological, medical, sociological and moral problems, is suffered only by female victims. A child of a person incapable of consenting to sexual intercourse may be grossly handicapped with a mental disease or defect inherited from his/her mother and suffer not only the normal problems of a bastard child but one without a mother capable of caring for him. It is obvious that none of these consequences can occur where the "victim” is a male. The legislative determination that criminality should be applied only to males who engage in sexual intercourse with persons incapable of consent reflects these important considerations. Subdivision 1 of section 130.25 of the Penal Law constitutes a classification by gender that substantially relates to the important governmental interest of affording special protection for females incapable of consent to sexual intercourse, without equal application to their male counterparts, in recognition of the extremely great potential harm that may be suffered only by female victims, their offspring, and society. In short, the Legislature preceived a logic, a logic borne out by experience, that there was a need for such a statute as subdivision 1 of section 130.25 of the Penal Law where the mentally incapacitated person was female but not where the mentally incapacitated person was male. The classification is neither by design nor result in any way invidious, nor is it violative of any fundamental interest of men. It is a classifica *122 tion based not on sex but solely on physiology. Accordingly, it is not unconstitutional.
With respect to the defendant’s contention that there is not, demonstrably, a greater number of potential male offenders than female offenders, the court notes that no evidence, statistical or otherwise, has been presented to show that female offenders constitute a criminal problem of any importance.[3] Without any such evidence, the presumption that the Legislature has investigated and found the facts necessary to suport the legislation prevails. (I. L. F. Y. Co. v Temporary State Housing Rent Comm., 10 NY2d 263, supra.)
The decision of the First Circuit of the United States Court of Appeals in Meloon v Helgemoe (564 F2d 602, cert den 436 US 950, supra) which held a New Hampshire statute making it a felony for a male to have sexual intercourse with a consenting female under the age of 15 violative of equal protection, significantly involved a "statutory rape” section based upon the age of the victim, not the incapacity to give consent. The potential for harm where lack of consent is based on nonage pales by comparison with the potential for harm where the lack of consent is based on mental incapacity. The offspring of an underage girl can be expected to be normal, not so the offspring of a grossly incapacitated woman. Further it is noteworthy that Meloon is the only case that this court is aware of. that held even a "statutory rape” statute which applies only to males violative of equal protection. (See People v McKellar, 81 Cal App 3d 367; People v Mackey, 46 Cal App 3d 755; People v Green, 183 Col 25; State v Brothers, 384 A2d 402 [Del]; Matter of J. D. G, 498 SW2d 786 [Mo]; State v Elmore, 24 Ore App 651; Flores v State, 69 Wis 2d 509.) The McKellar and Brothers cases were decided after Meloon and specifically rejected its holding. This court is not bound by the *123 holding in Meloon and is not persuaded that it should be followed in this case.
Accordingly, defendant’s motion to dismiss the indictment against him on the ground that subdivision 1 of section 130.25 of the Penal Law is unconstitutional as violative of equal protection of the laws is denied.

. Females are subject to prosecution under New York’s rape statutes by virtue of section 20.00 of the Penal Law for accessorial conduct, namely, aiding and abetting. (People v Reilly, 85 Misc 2d 702.)

. Although the rape statutes per se apply by their language solely to males, it can be argued that the same conduct proscribed against males under the rape statutes are proscribed against females under the various sexual abuse and sexual misconduct statutes, whiph by their language apply equally to men and women, albeit with less severe penalties.
Specifically in the context of the instant case, although males incapable of consent to sexual intercourse are not prtoected under subdivision 1 of section 130.25 of the Penal Law, such persons, may be protected from sexual exploitation under subdivision 1 of section 130.60 of the Penal Law, sexual abuse in the second degree, which prohibits "sexual contact” with persons incapable of consent and applies to all perpetrators, male and female.
The legislative history of this section does not indicate that its specific purpose was to criminalize conduct of a female which if committed by a male would constitute rape in the third degree under subdivision 1 of section 130.25 of the Penal Law, but this may well be its effect.
Sexual abuse in the second degree is a class A misdemeanor while rape in the third degree is a class E felony. The greater potential penalty faced by male perpetrators is consistent with the greater possible harm that may be suffered by female victims— i.e., unwanted pregnancy (see infra).
From the foregoing it is obvious that the act of the Legislature in limiting potential defendants directly under the rape statutes to males was not an invidious and calculated scheme to give women immunity from prosecution for what is commonly considered to be unlawful sexual conduct, nor an invidious and calculated scheme to deny "male victims” of female sexual predators equal protection of the laws.
It was the purpose of the Legislature to enact a law the substance of which would meet head-on a serious and substantial evil in our society. The doctrine of equal protection does not require unnecessary legal symmetry nor does it require the elevation of sophistry over reality. (See Frontiero v Richardson, 411 US 677, infra.)

. Records compiled by the New York State Division of Criminal Justice Services with respect to arrests in the State of New York in 1976 and 1977 for all categories of sex offenses show as follows:
SEX OFFENSES -1976
MALES: TOTAL 4,256
ADULTS 3,689 FEMALES: TOTAL 168
ADULTS 148
SEX OFFENSES - 1977
MALES: TOTAL 4,938
ADULTS 4,401
FEMALES: TOTAL 185
ADULTS 159 *123 It should be noted that females are excluded only from the “rape” category of article 130 of the Penal Law; they can be charged with any other sex offense, including sodomy, sexual abuse, and sexual misconduct.