Edward Smith was indicted for "rape" for violating §13A-6-61, Code of Alabama 1975. The jury found him "guilty as charged" and the trial court sentenced him, *Page 457 
pursuant to the Alabama Habitual Felony Offender Act, to life imprisonment without parole.
Sufficient evidence was presented by the prosecution to support the jury's finding that this appellant raped the prosecutrix on January 24, 1981, either at a "big barn" south of Montgomery, or at John's Motel No. 2 in Montgomery, or both. The prosecution's evidence revealed that the prosecutrix knew the appellant, and that the appellant tricked her into leaving a "night club" with him, forced her by threats of bodily harm to have sexual intercourse with him, and eventually apologizedfor his actions while driving her back to her automobile.
The appellant testified not only that he did not force the prosecutrix to have sexual intercourse with him on the night in question but also that he had no contact with her whatsoever. (R. 131-134). In fact, he testified that on this night he did not visit the "night club" from which the prosecutrix was abducted. (R. 156-159).
The prosecutrix was allowed, over the appellant's objections, to introduce two other women who also testified that they, too, had been raped by the appellant. The first of these witnesses testified that the appellant abducted her from a Montgomery city street in late July, 1980, and took her to a vacant house south of Montgomery and raped her.
This house was located on the same isolated dirt road and very close to the "big barn" where the prosecutrix was allegedly raped. This witness testified that after the appellant beat, threatened and raped her, he drove her back tothe city of Montgomery and apologized for his actions.
The other witness testified that, like the prosecutrix, she knew the appellant. She saw him at a "night club" one night in December, 1980, when she was home visiting her mother during the Christmas holidays. He took her to his room at John's Motel No. 2, beat her, threatened her, and then raped her. When he was through, he drove her back to the street where her motherlived, apologized for his actions and let her out of the car.
Besides his own testimony denying that he even saw the prosecutrix on the night in question and denying any sexual contact with the other two alleged rape victims who had testified for the prosecution, the appellant's only other evidence in his behalf was the testimony of his girl friend who stated that he was "a nice person."
 I
Appellant's primary contention on appeal is that the trial court erred in permitting the prosecution to introduce evidence of these "three other rapes" allegedly perpetrated by the appellant. Two of these alleged rapes were not even prosecuted and the appellant was acquitted for the third. Appellant argues that the probative value of these alleged prior offenses was far outweighed by their ineradicable prejudicial effects.
 A
We can dismiss appellant's arguments concerning the alleged rape for which appellant was acquitted for two reasons. First, the evidence of this incident was first introduced to the jury by the appellant, himself, in an unresponsive answer to a cross-examination question by the prosecution. (R. 171). Further inquiry by the prosecution regarding the circumstances of that incident was prevented by the trial court, which sustained appellant's subsequent objections (R. 172 and 174). Secondly, Alabama follows the rule that an acquittal of a prior offense does not render otherwise admissible evidence of that offense inadmissible. Mitchell v. State, 140 Ala. 118,37 So. 76 (1904); Robinson v. State, 40 Ala. App. 101, 108 So.2d 188
(1959).
Therefore, the focus of our discussion will be on the admissibility of the evidence concerning the two alleged prior offenses that were not prosecuted. (R. 79 and R. 104).
 B
As the appellant points out, the prosecution's strategy in this case was obvious. The prosecution was faced, as in many *Page 458 
rape cases, with a situation where the final outcome would depend upon "the prosecutrix' word against the appellant's." There were no other eyewitnesses to the crime. Because the prosecutrix was scared and emotionally upset, she consequently delayed in reporting the incident to the police. There was no direct physical evidence to connect this appellant with this crime.
Moreover, in this particular instance the prosecutrix knew her assailant and voluntarily left a "night club" with him late at night. A conviction under these circumstances was doubtful. The prosecutrix would be, at best, emotionally unstable on the witness stand. The appellant, if indeed he had escaped conviction on prior rape charges, would undoubtedly be an experienced and perhaps a more persuasive witness.
The prosecutrix positively in court identified the appellant as the man who raped her. The appellant insisted that he did not rape her and that he was not even with the prosecutrix on the night in question. The prosecution, as in most rape cases, was aware of the fact that this prosecutrix' testimony, alone, pitted against this emphatic denial by the appellant might not be sufficient to convince the jury that she had accurately identified her assailant.
However, the prosecution knew that there were circumstances surrounding this rape incident that were very unusual. After the rapist beat and choked the prosecutrix, threatened further violence, and repeatedly raped her, he not only apologized forhis actions and begged her forgiveness but also drove her backto her automobile where she could return to safety. These were two of the aspects of this rape incident that the prosecution believed would connect this appellant with this crime.
Therefore, the evidence was introduced that on at least two prior occasions within six months of this incident, the appellant raped women (who positively identified him at trial) to whom he afterwards apologized and that he eventuallyreturned each of them to a place of safety. In essence, he used the same means or method of operation of perfecting this rape or followed the same "modus operandi" that he had used on prior occasions. It is these unique similarities with the instant offense that justify the admission of this evidence concerning these two alleged collateral offenses. Johnson v. State,242 Ala. 278, 5 So.2d 632 (1942); Daniels v. State, 243 Ala. 675,11 So.2d 756, cert. denied, 319 U.S. 755, 63 S.Ct. 1168,87 L.Ed. 1708 (1943); Harvey v. State, 41 Ala. App. 300,130 So.2d 823 (1961), and cases cited therein; Humphrey v. State,54 Ala. App. 62, 304 So.2d 617 (1974); Hogue v. State, 54 Ala. App. 682, 312 So.2d 86 (1975), and cases cited therein. Hayes v.State, 384 So.2d 623 (Ala.Cr.App. 1979), cert. denied,384 So.2d 627 (Ala. 1980).
Furthermore, one of the other incidents was similar in that the victim knew the appellant, left a "night club" with him late at night and was raped at appellant's room at John's Motel No. 2. The other offense had the additional similarity that it occurred in a house on the same isolated dirt road in south Montgomery where the barn, in which the prosecutrix was first raped, was located.
The appellant argues in brief that the evidence of these prior offenses does not fit any of the well recognized exceptions to the rule excluding evidence of collateral offenses. He claims that under these circumstances the "identity" exception does not apply because "identity" was not in issue.
To the contrary, the appellant's own testimony that he wasnot with the prosecutrix that night coupled with the prosecutrix' positive identification of appellant as her assailant placed "identity" in issue. Humphrey v. State, supra;Hogue v. State, and authorities cited, supra. This was not a question of whether or not the prosecutrix could correctly identify the appellant, a man she knew, but rather it was a question of whether or not the prosecutrix could "identify" or "connect" the appellant with this incident.
In the case at bar, we are of the opinion that the similarity in circumstances of time, place and method of operation between the assault on the prosecutrix and the assault *Page 459 
on the other two female victims is very great.
We therefore hold that the trial court properly admitted the evidence of the prior assault on the other victims. Authorities cited herein. See also 77 A.L.R.2d 841. Given the testimony of the prosecutrix on the issue of the appellant's intent and identity, we are of the opinion that the trial court's rulings are correct.
 II
Appellant asserts that the trial court erred in not granting his request for a preliminary hearing before indictment.
We need not reach this issue because, as in Hale v. State,355 So.2d 1158 (Ala.Cr.App. 1978), there is nothing in the record to verify appellant's arguments at trial and his stated grounds in his "motion to quash" that he indeed requested, and the trial court so ordered, a preliminary hearing. Even if he cleared this procedural hurdle, the issue of the right to a preliminary hearing "before indictment" has been clearly decided adversely to him for the reasons set forth in Duncan v.State, 369 So.2d 885 (Ala.Cr.App. 1979), and reaffirmed inBrown v. State, 392 So.2d 1248 (Ala.Cr.App. 1980), cert. denied, 392 So.2d 1266 (Ala. 1981), and also Snipes v. State,404 So.2d 106 (Ala.Cr.App.), cert. quashed 404 So.2d 110 (Ala. 1981).
 III
Appellant further contends that the trial court erred in the sentencing hearing by admitting "improper" evidence of the appellant's three prior felony convictions. Appellant does not contend that he did not have three prior convictions, but rather that they were not properly proven at the sentencing hearing. In fact, the appellant testified at trial (R. 129-132) that he had been convicted of the same three felonies sought to be proven at the sentencing hearing.
We refrain from specific comment with reference appellant's arguments in brief because his specific objections raised on appeal do not correspond to his specific objections raised at trial.
During the sentencing hearing, appellant objected to the state's proof of appellant's two state felony convictions because the documents used (R. 240-241) did not exhibit the trial court's "finding of guilty" and he objected to the proof of his federal felony conviction because the document used (R. 242) did not bear a seal (R. 218). In brief on appeal, however, the only ground asserted in objection to the proof of the state convictions is that the document at R. 241 "does not reflect Defendant was represented by counsel or that he knowingly waived same." The only ground stated in objection to the proof of the federal conviction is that the document at R. 242 does not comply with a requirement of ARCP, Rule 44 (a)(1), that the document contain "a certificate under oath signed by the person stating he is the official custodian of the record and that the laws of his jurisdiction require the record to be kept."
The trial court will not be placed in error for these grounds on appeal that were not specified during the sentencing hearing. Rogers v. State, 53 Ala. App. 573, 302 So.2d 547
(1974); Slinker v. State, 344 So.2d 1264 (Ala.Cr.App. 1977);Johnson v. State, 364 So.2d 1187 (Ala.Cr.App.), cert. denied,364 So.2d 1190 (Ala. 1978).
We also note that in this case the appellant's testimony
solicited by his counsel on direct examination that he had been convicted of these three prior felonies certainly was proper proof of these convictions. Thus, no error appears.
 IV
Appellant's final two arguments request that we declare "unconstitutional" Alabama's Habitual Felony Offender Act, §13A-5-9, Code of Alabama 1975, and Alabama's rape statute, §13A-6-61, Code of Alabama 1975.
 A
Appellant complains that the apparent allowance for "selective enforcement" of the Alabama Habitual Felony Offender Act conflicts with his "right to jury trial" and his "right to equal protection." *Page 460 
Since appellant received a jury trial and there is no evidence of record of any improper "selectivity" of enforcement as to appellant, appellant's argument must fail. Moreover, these issues as raised by appellant, have been clearly resolved against him by prior decisions which we herein cite. Watson v.State, 392 So.2d 1274 (Ala.Cr.App. 1980), cert. denied,392 So.2d 1280 (Ala. 1981); Williams v. State, 393 So.2d 492
(Ala.Cr.App. 1981); Holley v. State, 397 So.2d 211
(Ala.Cr.App.), cert. denied, 397 So.2d 217 (Ala. 1981); Serittv. State, 401 So.2d 248 (Ala.Cr.App.), cert. denied,401 So.2d 251 (Ala. 1981).
 B
Appellant contends that § 13A-6-61, Code of Alabama 1975, is unconstitutional because it is impermissibly "gender-based" in violation of the "equal protection" clause of the Fourteenth Amendment to the United States Constitution. Section 13A-6-61
defines the crime of "rape in the first degree" as the act committed when a male "engages in sexual intercourse with afemale by forcible compulsion" and designates this crime as a Class A felony. On the other hand the crime committed when afemale "engages in sexual intercourse with a male without his consent" is "sexual misconduct," which is covered in §13A-6-65, Code of Alabama 1975, and designated as a Class Amisdemeanor. It is this inequality in punishment, a Class Afelony for males versus a Class A misdemeanor for females, for essentially the same criminal conduct that appellant cites as violative of his right to "equal protection."
True these statutes clearly single out males for more severe punishment than that provided for females who commit a similar crime. However, § 13A-6-61 (the only statute challenged in the instant case) will withstand constitutional scrutiny if its "gender-based" classification is reasonable, not arbitrary, and rests upon some ground of difference having a fair and substantial relationship to the objective of the legislation.Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971);Hobson v. Pow, 434 F. Supp. 362 (1977).
The obvious objective of § 13A-6-61 (a)(1) (the only portion of this statute under attack) is to protect females from sexual attacks by males which result in nonconsensual sexual intercourse. This objective is a legitimate state interest
because of the potential harm to the victim and society. Female victims of nonconsensual sexual intercourse by males are subjected to a possible unwanted pregnancy and the medical,physical, sociological, moral, and psychological problems
associated therewith, in addition to the physical injuries andpsychological traumas potentially inflicted upon any victim of a sexual assault. This "unwanted pregnancy" risk to the victims is uniquely characteristic of nonconsensual sexual intercourse
perpetrated by males upon females in contrast with the similar act committed by a female upon an unwilling male. This specific characteristic of the crime described in § 13A-6-61 (a)(1), which presents the possibility of a higher degree of harm to its victims than does its counterpart described in § 13A-6-65
(a)(2), is the clearest example of a "ground of difference" sufficient to justify this "gender-based" classifications.
Moreover, "rape" of females is a long recognized and very serious problem in this state due not only to the severity of this potential harm to its victim but also to the frequency
with which it occurs. This frequency factor further distinguishes a § 13A-6-61 (a)(1) crime from a § 13A-6-65
(a)(2) crime. The appellant has not presented and we are not aware of any evidence to the effect that nonconsensual sexual intercourse by females is as serious a problem as nonconsensual sexual intercourse by males.
Moreover, such nonconsensual sexual intercourse often results in unwanted pregnancy. This too often results in society having to care for the victims who are the result of such attacks, as well as the children born as the result of such. *Page 461 
These reasons are clearly a sufficient basis for legislative action.[1]
It is our decision that § 13A-6-61, Code of Alabama 1975, isnot unconstitutional due to its alleged discriminatory treatment of males because the punishment prescribed therein was reasonably designed to deter and control a specific and serious problem of legitimate concern to the citizens of this state.
For the foregoing reasons, this case is due to be and is hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] For cases in other states with similar analyses upholding the constitutionality of similar statutes see: People v. Reilly,85 Misc.2d 702, 381 N.Y.S.2d 732 (1976); People v. Davoli,95 Misc.2d 402, 407 N.Y.S.2d 432 (1978); People v. Smith,97 Misc.2d 115, 411 N.Y.S.2d 146 (1978); State v. Witt, 310 Minn. 211, 245 N.W.2d 612 (1976); Lamar v. State, 243 Ga. 401,254 S.E.2d 353 (1979); Stewart v. State, 534 S.W.2d 875 (Tenn.Crim. 1975).