278 So.2d 317 (1973)
Bernard BRINSON, Appellant,
v.
STATE of Florida, Appellee.
Linten Edward WILSON, Appellant,
v.
STATE of Florida, Appellee.
Nos. Q-214, Q-266.
District Court of Appeal of Florida, First District.
May 17, 1973.
Rehearing Denied June 8, 1973.
Rehearing Denied June 20, 1973.
*318 Richard W. Ervin, III, Public Defender; Brian T. Hayes, of Parsons, Hayes & Parsons, Tallahassee, for appellants.
Robert L. Shevin, Atty. Gen., Donald K. Rudser, Asst. Atty. Gen., for appellee.
Rehearing Denied June 8, 1973 in No. Q-266.
Rehearing Denied June 20, 1973 in No. Q-214.
SPECTOR, Chief Judge.
Bernard Brinson and Linten Edward Wilson were convicted of sodomy and sentenced to twenty years and fifteen years, respectively. They now seek reversal of that conviction primarily on authority of the Florida Supreme Court's decision in Franklin v. State, 257 So.2d 21 (Fla. 1971).
The incident giving rise to the charges and conviction herein occurred in Raiford prison. The appellants and their victim were prison inmates. Brinson was serving a six-year term for breaking and entering, while Wilson was serving two life sentences on rape and robbery convictions in Leon County, Florida. At the trial the victim described his ordeal in the following manner:
"A. I was sitting in my cell. I had gotten a book and laid down to read it for an hour or two and this time was between one-forty-five and two p.m. And two inmates walked into my cell and began to beat upon me.
"Q. Did you know the two inmates?
"A. No, sir, not by name.
"Q. Were these white inmates or colored inmates?
"A. Colored inmates.
"Q. Go ahead.
"A. After the first two walked in there were two more that came in with them and after the second two came in, then four more came in, so there was a total of eight. All eight of them started to beat upon me.
"Q. Where did they beat upon you?
"A. Mostly my face, chest and stomach and groin.
"Q. Go ahead.
"A. After they had beat me severely and threatened my life, another inmate pulled my pants down when I was unable to give any physical resistance at all due to the beating and four of them took terms [sic] in sodomy.

*319 "Q. Now, when you say `took turns in sodomy', be specific. Tell the jury what specifically did they do.
"A. They hiked my legs up to my knees and inserted their penis in my rectum.
"Q. You say this took place with four of them?
"A. Yes, sir.
"Q. How long did this episode last?
"A. Approximately ten or fifteen minutes.
"Q. And during this time did you make an outcry at all?
"A. I tried to make one and my cry was muffled by a towel. At this point another inmate told me if I tried to cry out again he would kill me with a shank.
"Q. A shank, what's that?
"A. A homemade knife."
In Franklin, the court held Section 800.01, Florida Statutes, F.S.A., the law under which the offense described above had theretofore been punished, to be unconstitutional for vagueness and uncertainty in its language.
The statute reads as follows:
"Whoever commits the abominable and detestable crime against nature, either with mankind or with beast, shall be punished by imprisonment in the state prison not exceeding twenty years."
In Franklin, the court held the above statute invalid and reversed Franklin's conviction of violating that statute by engaging in homosexual activity with a consenting adult. In arriving at its decision, the state Supreme Court cited the growing trend of constitutional decisions on "the invasion of private rights by state intrusion" and that such rulings must be considered in determining the validity of statutes such as the one here involved. At this juncture we think it necessary to emphasize, as we will several times during the course of this opinion, that it is the state Supreme Court's judgment, and not that of this court, which characterized this activity as being a private right into the conduct of which the State has questionable right to intrude. Citing the "change and upheaval of modern times", the Supreme Court said that it should not be blind to the facts of life and that the law must be "responsive to the society which it serves".
For whatever reason impelled it, the Supreme Court held that the language of the statute fails to inform "in language which is relevant to today's society ... understandable to the average citizen of common intelligence" what it is that the statute prohibits. Since Franklin involved two consenting adult males engaging in homosexual activities, and the language of that decision was reminiscent of the rhetoric concerning certain newly emerging societal groups, it was thought when the decision was handed down that the constitutional infirmity discovered in the statute by the Supreme Court would apply only to homosexual activity between consenting adults notwithstanding the court's language striking the statute down in its entirety. This because of the nature of the conduct involved in that case and, secondly, because of the rhetorical arguments made by the court in supporting its conclusion of vagueness and overbreadth. It thus appeared to constitutional observers that the "modern times" frame of reference seemingly underpinning and circumscribing the Franklin decision indicated, albeit not without the same decisional vagueness earlier condemned in the statute, that the elements of consent and right of privacy were at the heart of the ratio decidendi of the court's decision.
However, it was not to be. For several months following the Supreme Court's Franklin decision, it reversed in a memorandum per curiam decision the conviction of Michael John Parisi who had been found guilty by a jury of violating the same crime against nature statute, Section 800.01, Florida Statutes, F.S.A., which had *320 been invalidated by the Franklin court. Parisi v. State, 265 So.2d 699 (Fla. 1972). While Parisi involved the same statute as Franklin, the record in that case discloses that the nature of the crime was significantly different.
Parisi was not a consenting adult homosexual slipping around in the dark doing his thing with another consenting adult. Parisi was a vicious animal who forcibly, under threat of death, made a middle-aged woman submit to a depraved and degrading assault notwithstanding her prayerful entreaties to be spared from his sordid sexual attack. The victim was forced on threat of great bodily harm and death to commit fellatio upon Parisi. That's sodomy per os, and lest we be held guilty of vagueness and overbreadth condemned by the Franklin court, it means that he forcibly penetrated her mouth with his penis.
Following Parisi's reversal and remand for sentencing as a misdemeanant under Section 800.02, Florida Statutes, it became apparent that citizens of this State were no longer protected from deviant forcible sexual assaults by the only felony statute theretofore generally invoked for that purpose.
Thus, under Franklin and Parisi we are not permitted to affirm the convictions of the appellants in the instant case because although it is clear that they placed their victim in fear of death and great bodily harm as they forcibly raped him in the rectum, that conduct is no longer punishable as a felony under Section 800.01, Florida Statutes, F.S.A., under which they were charged. Following the Supreme Court's decision in Franklin, the only avenue remaining at first blush is to reverse and remand these two appellants for sentencing under Section 800.02, Florida Statutes, F.S.A., which solemnly declares that the act of appellants in the case at bar is a misdemeanor of the second degree punishable by not more than sixty days in the county jail under Section 775.082(3)(b). While a sixty-day sentence might well avoid the imposition of a twenty-year sentence  equal to that for manslaughter  on the likes of Franklin, as that court pointed out, the ruling in Franklin unwittingly limits the sentence on the likes of Parisi, Brinson and Wilson to a maximum of sixty days. Thus, just as it might have been harsh punishment to subject consenting adult homosexuals to the same penalty reserved for those convicted of manslaughter, it is sure to come as a monumental surprise to the victim of Brinson and Wilson (and surely to Parisi's middle-aged housewife) that they who perpetrated such a base and degrading sexual assault of forcible oral or anal sodomy upon them are to be punished no more for their transgressions than one convicted of spitting on the sidewalk in violation of a county ordinance.
Although the court in Franklin recommended legislative study of the subject heretofore covered by Section 800.01, Florida Statutes, F.S.A., that body has failed to respond, although the 1972 Legislature attempted to provide a solution by detailing more specifically the conduct proscribed in more modern language than that found in the now defunct Section 800.01. However, that effort failed when a bill passed by the Senate failed to gain passage in the House. And so, forcible sodomy of the variety discussed above remains statutorily unrestrained in any meaningful sense of the word.
The hiatus resulting from the Supreme Court's decision invalidating the sodomy statute in Franklin and the Legislature's unwillingness to bridge an obvious void in our criminal laws has made Florida the only State in the country, and perhaps the world, where forcible sodomy of the kind involved in Parisi, supra, and the case sub judice is only a misdemeanor punishable by sixty days in the county jail. It is clear that the law is not in harmony with the demands of our society. It is our unmistakable duty to reestablish that harmony if we can do so by invoking the generally recognized principles of statutory construction *321 and interpretation, giving due cognizance to the circumstances resulting from the Supreme Court's decision in Franklin whereby the only statute theretofore invoked to prohibit and punish forcible sodomy was invalidated. Thus, if there obtains any other statute whereunder such conduct can be held to be a felony, we must so hold to the end that our constitution and law be applied so as to "... insure domestic tranquility, [and] maintain public order, ..." Preamble, Florida Constitution, 1968.
At common law, sodomy was a felony punishable by death. Ex parte Miller, 23 Idaho 403, 129 P. 1075. We know of no language contained in the Franklin decision from which it possibly could be said that forcible sodomy has gained such a degree of acceptance or tolerance in our society that persons of common intelligence are in a quandary as to whether such conduct is lawful. The whole tenor of Franklin confines the finding of vagueness to the consenting adult situations. In our view, acts constituting forcible sodomy are not mere misdemeanors  they are felonies and society demands that forcible sodomy be treated as felonious conduct and punishable as such.
Our research reveals that sodomy has been held to include forcible carnal knowledge of the victim. State v. Schwartz, 215 Minn. 476, 10 N.W.2d 370, 81 C.J.S. Sodomy § 1, p. 369. Carnal knowledge includes sexual intercourse, but that is not all that carnal knowledge includes. Sodomy may not be committed without experiencing carnal knowledge of the victim. 8 R.C.L. 335, § 166. The word "carnal" is derived from the Latin word meaning flesh. The Webster's Collegiate Dictionary defines it variously as fleshly; sensual; related to the body as the manifestation of man's lower nature; implies connection with flesh; implies habitual indulgence in sensations and desires having a physical origin. The word pertains to the body, its passions and its appetites. Carnal pertains to the body and includes carnal knowledge of the body of another person by either natural or unnatural copulation. People v. Knapp, 15 Ill.2d 450, 155 N.E.2d 565, 567. Carnal knowledge includes more than sexual intercourse. It extends to the gratification of animal appetites or lusts upon the body of another. Commonwealth v. Yingling, Pa., 19 Cambria 142. It means bodily connections. People v. Burke, 400 Ill. 240, 79 N.E.2d 488, 489.
Rape and sodomy which constitute forcible carnal knowledge are in certain material respects analogous. Hopper v. State, 302 P.2d 162 (Okl.Cr.). By like token, the purpose of carnal knowledge statutes making it a crime to carnally know and abuse any female is to protect womanhood. State v. Schwartz, supra.
The essential guilt of rape or forcible carnal knowledge is outrage to the female's person and feelings. State v. Romo, 66 Ariz. 174, 185 P.2d 757. In the case of carnal knowledge of an unmarried female under a given age, usually eighteen, the law was said to be for the purpose of protecting her chastity. It had as a further purpose to protect against unwanted pregnancies, whether induced by force or guile. However, the latter object of the law's protective goals probably is not so important as in bygone days as manifested by the "easy-come, easy-go abortion laws" newly enacted by the Legislature.
The cases in this and other jurisdictions which discuss the material elements of the crime almost always contemplate that a female be the victim of a forcible act and that the penetration be of the female sexual organ.
There is a notable exception to the general rule that the victim must be female. That exception is found here in Florida and was articulated by the court in Deas v. State, (1935) 119 Fla. 839, 161 So. 729. There the court had before it a conviction for violation of Chapter 8596, Acts of 1921, now carried as Section 794.05, Florida Statutes, F.S.A. Prior to 1921, the predecessor law made it a crime for a male *322 person to violate the chastity of an unmarried female person under eighteen years of age by unlawful carnal intercourse. However, in 1921 the law was amended at the first session of our Legislature following ratification of the national women's suffrage amendment, Amendment 19, United States Constitution, so as:
"... to abolish the distinction as to sex, and thereupon to provide for the protection of the chastity of all unmarried persons, whether male or female, under the age of eighteen years when of previous chaste character." Deas v. State, supra, at p. 730.
The court concluded in Deas that the statute as amended following women's suffrage "... is designed to protect the youth of this state of both sexes from the initial violation of their actual previous condition ..." at page 730.
Forcible carnal knowledge and rape is proscribed and punished by Section 794.01, Florida Statutes, F.S.A., which reads as follows:
"Rape and Forcible carnal knowledge; penalty.  Whoever ravishes and carnally knows a female of the age of ten years or more, by force and against her will, or unlawfully or carnally knows and abuses a female child under the age of ten years, shall be guilty of a capital felony, punishable as provided in § 775.082. It shall not be necessary to prove the actual emission of seed, but the crime shall be deemed complete upon proof of penetration only."
Although, as has been noted hereinbefore, rape and carnal knowledge statutes have generally been held to connote forcible penetration of the sexual organ of the victim, there is nothing in the language of the statute to require such a restricted interpretation. Its language is not expressly limited to the sexual organ. To be sure, it has been applied in that limited manner, but such limited application stemmed more from the fact that there was then a viable law on the statute books, to wit, Section 800.01  the crime against nature statute  which could be and was being invoked to punish forcible carnal knowledge when the penetration occurred in a nonreproductive orifice, than from a holding that the wording of Section 794.01, Florida Statutes, F.S.A., would not include forcible penetration into the oral or anal orifice by force.
In our view, the body and mind of a victim of a forcible sexual assault is no less outraged because the penetration by the assailant occurred in the anal orifice  as in the instant case  or in the oral orifice  as in the Parisi case  rather than in the vaginal orifice. In either case, it is a gross invasion of the privacy of one's body which cannot be tolerated by a civilized society.
Accordingly, we hold that any forcible penetration by a man's sexual organ into any bodily orifice of another against the latter's will constitutes forcible carnal knowledge of the victim and upon conviction thereof is punishable under Section 794.01, Florida Statutes, F.S.A.
Moreover, we hold that males are entitled to the same protection from degrading ravishment and sexual assaults, regardless of the orifice involved, as are females. It is no longer consonant with constitutional principles of equal protection to continue a criminal sanction against sexual assaults on females and not provide the same criminal sanction where such assaults are made on males.
We hold therefore that any verbiage contained in Section 794.01 that purports to limit the protective provisions of the law to females while such verbiage withholds that same protection from males is violative of Sections 2, 9 and 21 of Article I of the Florida Constitution, F.S.A. and Section 1 of the Fourteenth Amendment of the United States Constitution.
While we must reverse the convictions of these appellants because the crime against nature statute under which they *323 were charged has since been invalidated by the Supreme Court of Florida in Franklin, supra, we nonetheless remand these cases to the trial court for further proceedings under Section 794.01, Florida Statutes, on charges of rape and forcible carnal knowledge.[1]
Reversed and remanded.
WIGGINTON and JOHNSON, JJ., concur.
NOTES
[1] The constitutional principle of double jeopardy is inapplicable where the defendant was earlier tried under a void statute. 21 Am.Jur.2d, Criminal Law, § 210, n. 14.