463 So.2d 1036 (1985)
Willie C. HARPER
v.
STATE of Mississippi.
No. 55244.
Supreme Court of Mississippi.
January 16, 1985.
Rehearing Denied February 27, 1985.
Thomas D. Lee, Forest, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Henry C. Clay, III, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and DAN M. LEE and ROBERTSON, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Circuit Court of Scott County wherein the appellant, Willie *1037 Harper, was found guilty of the rape of a Scott County woman.[1] Harper was sentenced to serve a term of thirty-five years in the custody of the Mississippi Department of Corrections. From his conviction and sentence he brings this appeal. Finding no merit to his arguments, we affirm.
The prosecutrix testified that on the evening of August 25, 1982, she went to bed at approximately 10:00 p.m. in her apartment on the ground floor of an apartment building in Forest, Mississippi. In the early morning hours she was awakened by something pressing on her neck. As she awoke she realized someone was standing over her next to the bed holding a knife to her throat. She then noticed that her five-year-old daughter had climbed in her bed and was sleeping next to her.
The figure with the knife told the prosecutrix to lie still. The prosecutrix testified that she recognized the voice "by just being around." She identified the voice as that of Willie Harper. She stated that she had heard Harper before at soft ball games and around her apartment. She stated that she had known Harper "As long as I can remember." She testified that she had no doubt that the voice of her assailant belonged to Willie Harper.
The prosecutrix further testified that Harper took off his clothes and got in bed with her. He then removed her underwear and had sex with her. She testified that all the while he kept the knife pressed tight against the right side of her neck and that she only had sex with him out of fear for her life and the safety of her daughter. She stated that when her assailant put his mouth against her neck she didn't feel any teeth. He told her that he had been to prison and would be going back in three days.
The entire episode lasted a half-hour to forty-five minutes. After Harper left, the prosecutrix lay on her bed for a few minutes to make sure that he was gone and then got up and searched her house. She noticed that there was grass and sand on the couch in her living room directly under an open window. She grabbed her daughter and drove to her parents' home. She noticed the time was 3:15 a.m. when she left her house.
Deborah Derrick, a former girlfriend of Harper's, testified that she lived in the same apartment building as the prosecutrix. Ms. Derrick testified that the morning of the rape, Willie Harper came to her door and hollered for her to open it. She testified that he knocked persistently and said if she didn't open the door he was going to shoot it down. Out of her fear of Harper, she yelled to a passerby to go get her father. Thereafter Harper left and Ms. Derrick last saw him near the prosecutrix's apartment window. She stated that in between the time he first came and pounded on her apartment door and when he left, Harper was with a person in a blue van but that that person left before Harper.
Ms. Derrick further testified that some two to three weeks before the alleged rape she heard Harper remark that he would not mind "having some" of the prosecutrix. Ms. Derrick testified that Harper had no top teeth.
Dr. Bill Lewis, a hospital physician, testified that at 3:50 a.m. on August 26, 1982, the prosecutrix arrived at the hospital. She explained that she had been raped and was given a standard rape exam at 4:25 a.m. That exam revealed sperm in her vagina indicating that she had recently engaged in sexual intercourse. Dr. Lewis testified that the prosecutrix was upset and crying.
Hiram Richardson, an investigator with the Forest Police Department, verified that there was sand and grass on the prosecutrix's couch and living room rug which indicated the possibility that someone had climbed in the living room window. He further testified that Willie Harper had no top teeth.
Phil Gray, a/k/a Johnny Gray, testified for the defense. He stated that he lived *1038 "just down the road" from Willie Harper. On the night of August 25, 1982, he and Harper went to a nightclub in Forest, Mississippi called Soul City. They arrived there at approximately 7:30 to 8:00 o'clock p.m. At some point in the evening Harper left with Edward Smith, a/k/a Poonie, in a blue van. Gray testified that around 2:10 to 2:15 a.m. he again met up with Harper. Gray stated that he didn't have a watch but he knew what time it was because Soul City had closed at 2:00 o'clock. Gray had just left Soul City and he saw Harper coming from that direction. Gray was in the company of two women and he stopped to pick up Harper. According to Gray, they took the women home. The first woman, Lisa Townsend, lived in Johnsontown, approximately twenty minutes away. The second girl, Frieda Johnson, lived in the Brusher community, approximately fifteen minutes away. Gray testified that after taking the women home he took Harper home. By then it was about 3:00 o'clock in the morning.
Gray admitted that Harper is his second cousin and close friend. He also testified that Harper has no top teeth. Following Gray's testimony, the defense rested. The jury deliberated on the above detailed testimony and returned a verdict of guilty of rape. The jury did not establish Harper's sentence at life imprisonment and therefore the circuit judge was left with the responsibility to sentence Harper to a term reasonably calculated to be less than life. Circuit Judge Marcus Gordon sentenced Harper to a term of thirty years. Actuarial tables establish Harper's expected life span as 37.3 years.

CONSTITUTIONALITY OF § 97-3-65
Harper's first assignment of error is that the circuit court erred in refusing to sustain his demurrer to the indictment on the ground that the statute is unconstitutional because although it establishes a crime for the rape of a female, it fails to also make it a crime to rape a male; therefore, argues Harper, it is violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution.
Harper was indicted under § 97-3-65(2) Miss. Code Ann. (Supp. 1984) which reads:
(2) Every person who shall forcibly ravish any female of the age of twelve (12) years or upward, or who shall have been convicted of having carnal knowledge of any female above the age of twelve (12) years without her consent, by administering to her any substance or liquid which shall produce such stupor or such imbecility of mind or weakness of body as to prevent effectual resistance, upon conviction shall be imprisoned for life in the state penitentiary if the jury by its verdict so prescribes; and in cases where the jury fails to fix the penalty at life imprisonment the court shall fix the penalty at imprisonment in the state penitentiary for any term as the court, in its discretion, may determine.
This Court has not yet faced the exact question presented here; however, in the case of Green v. State, 270 So.2d 695 (Miss. 1972), we held that the code section which made it a crime for a male to be a "peeping tom" was not violative of the equal protection clause on the ground that it did not also make it a crime for a female to commit the same act.
It is important here to realize what Harper is arguing. He is not arguing that the statute impermissibly fails to make it a crime for a woman to commit an act of rape. Indeed the language of the statute states that "every person who shall forcibly ravish any female ..." shall be guilty of the crime of rape.
What Harper is arguing is that he is a member of a class of individuals (rapists of women) who have been unreasonably singled out for punishment from the total class of rapists (all of those who commit rape whether their victims be female or male.) This argument presumes that the rape of males is not a punishable offense; however it ignores the existence of the sexual battery statute, § 97-3-95 Miss. Code Ann. (Supp. 1984). That section states, in part, that a person is guilty of *1039 sexual battery if he or she engages in sexual penetration of another person without his or her consent. Section 97-3-97(a) Miss. Code Ann. (Supp. 1984) defines sexual penetration as:
(a) "Sexual penetration" includes cunnilingus, fellatio, buggery or pederdasty, any penetration of the genital or anal openings of another person's body by any part of a person's body, and insertion of any object into the genital or anal openings of another person's body.
The penalty for sexual battery is incarceration in the state penitentiary for a period not to exceed thirty years. Section 97-3-101 Miss. Code Ann. (Supp. 1984). Therefore, the anal rape of a male is certainly as illegal as the vaginal rape of a female. This statute would be equally applicable to a male who is forced to engage in sexual intercourse with a female.
Other courts have rejected arguments identical to Harper's. These courts have relied upon the rationale that sex is a legitimate classification as it is reasonably related to the legitimate objective of the statute in protecting women from rape and the potential ensuing social ills including physiological, psychological and sociological trauma, possible pregnancy, and of medical and moral problems. People v. McDonald, 86 Mich. App. 5, 272 N.W.2d 179 (1978); People v. Reilly, 85 Misc.2d 702, 381 N.Y.S.2d 732 (1976); State v. Witt, 310 Minn. 211, 245 N.W.2d 612 (1976); Brooks v. State, 24 Md. App. 334, 330 A.2d 670 (1975); People v. Gould, 188 Colo. 113, 532 P.2d 953 (1975). Other states which have upheld rape statutes with a gender base classification of the victim include Arizona, Colorado, Georgia, Illinois, Kansas, Louisiana, Maryland, Minnesota, Montana, New York, Tennessee, Washington, West Virginia and Wisconsin.
Florida is the only state which takes the opposite view. In Brinson v. State, 278 So.2d 317 (Fla.App.Div. I, 1973) the Florida intermediate court of appeals held that a rape statute which purported to limit the protective provisions of that law to females while withholding the protection for males was violative of the state constitution and the Fourteenth Amendment to the United States Constitution. On appeal to the Florida Supreme Court, the Brinson decision was reversed on other grounds in an opinion which did not address this issue. Regardless, in Washington v. State, 302 So.2d 401, cert. denied 421 U.S. 918, 95 S.Ct. 1582, 43 L.Ed.2d 786 (Fla. 1974), the Florida Supreme Court held that males are entitled to the same protection from degrading ravishment and sexual assaults regardless of the orifice involved, and that it is no longer consonant with constitutional principles of equal protection to continue criminal sanction against sexual assault on females and not provide the same criminal sanctions for assaults made on males. Importantly, the issue in Washington was the definition of the term in the Florida rape statute: "carnal knowledge." The Florida decision did not strike down the statute for failing to apply a sanction for the rape of males, rather the court interpreted "carnal knowledge" to include the rape of a male. Therefore, the Florida decision simply held that the Florida rape statute included the anal rape of a male. Therefore, the court's language as to equal protection does not relate to an argument such as one asserted by Harper.
No ultimate court of appeals has yet adopted the reasoning Harper urges upon this Court. We are of the opinion that because the sexual battery statute effectively makes illegal the anal rape of males and because of the above mentioned societal concerns regarding the rape of females there is no merit to Harper's assignment of error.
Harper next argues that the trial court erred in refusing to grant him a new trial because the verdict was against the overwhelming weight of the evidence. Harper also asserts that he should have been given a directed verdict at the close of the state's case and a peremptory instruction following the close of all testimony.
The rule in this state is well known. In passing on motions for a directed verdict or a request for a peremptory *1040 instruction, all evidence on behalf of the state must be taken as true, together with the reasonable inferences that may be drawn therefrom, and if there is sufficient evidence to support a verdict of guilty, the motion for a directed verdict must be overruled and the peremptory instruction must be denied. Wilks v. State, 408 So.2d 68 (Miss. 1981); Goldman v. State, 406 So.2d 816 (Miss. 1981). Harper argues that the basis of the error in not granting him a new trial, directed verdict or peremptory instruction was that the state had failed to prove identification in that the prosecutrix's identification of him was based on hearing his voice at a softball game eight or nine years prior. In making this assertion, Harper fails to fully acknowledge all of the evidence against him. The prosecutrix testified that she had known Harper for as long as she could remember. She testified that there was no question in her mind but that Harper was the man who raped her. She also testified that she recognized his voice "by just being around." When her testimony is combined with Ms. Derrick's testimony placing Harper at the apartments at approximately the time of the assault and the proof that Harper did not have any upper teeth, corroborating the description of the assailant, we are of the opinion that the evidence is ample to sustain the conviction.
Harper's third assignment of error is that the trial court erred in refusing to grant Instruction D-10. That instruction reads:
The Court instructs the jury that if you believe from the evidence that there may be some other person who committed the crime of which the defendant is charged, and that the name of that person has not been disclosed by the evidence, it is not required of the defendant to show the name of such person.
During the discussion between the judge and counsel as to which instructions would be granted, the court informed the attorney for Harper that it would grant only one instruction on the law of alibi. Instruction D-12 was given:
The Court instructs the jury that the defense interposed by the defendant in this cause is known in law as an alibi, that is, that the defendant was at another place at the time of the commission of the crime charged and such defense is as proper and legitimate, if proved, as any other, and all the evidence bearing on that point should be carefully considered by the jury; and, if in view of all the evidence, the jury have any reasonable doubt as to whether the defendant was in some other place when the crime was committed, then it is your sworn duty to give the defendant the benefit of the doubt and find him not guilty.
Harper relies on Jeffries v. State, 89 Miss. 643, 42 So. 801 (1906), in his argument that D-10 should have been granted. In that case an instruction identical to D-10 was refused. In a very terse opinion, the Court stated, "While we would not, for this only, in this case, reverse for the refusal to give the twelfth charge asked by appellant, still we think it should have been given." 89 Miss. at 646, 42 So. at 801.
While we agree with Harper that Instruction D-10 is a sound instruction on alibi, we are also of the opinion that the jury was adequately instructed on the burden of proof, elements of the crime, presumption of innocence and alibi. The failure to grant Instruction D-10 does not require the reversal of this case.
Harper's next assignment of error is that the court erred in allowing certain testimony of Deborah Derrick. The complained of testimony reads as follows:
Q. Deborah, I believe just while ago, I had asked you had you ever had occasion to be in the presence of the Defendant at a time when he may have made a statement about [the prosecutrix]. Tell us whether you heard Willie C. Harper make any statement directed toward [the prosecutrix].
A. Yes, sir, I did.
Q. Where were you at the time?
A. In my apartment.

*1041 Q. Was this the apartment at Meadowlawn?
A. Yes, sir.
Q. And how long before August the 26th, 1982, in your best judgment, was this?
A. For about two to three weeks.
Q. All right. Who else was present besides you?
A. Willie C. Harper.
Q. What statement did Willie C. Harper  well, did y'all see [the prosecutrix]?
A. [The prosecutrix], yes, sir.
Q. Where was she?
A. Outside.
Q. What statement did you hear Willie C. Harper make about [the prosecutrix]?
A. He said that he wouldn't mind having some of her.
Q. Would not mind having some of her?
A. Yes, sir.
Harper argues that the statement was inadmissible because it could not be taken as a threat or expression of ill will. Certainly the statement is not hearsay as it was not admitted to prove that Harper wouldn't mind having some of the prosecutrix. It was admitted to establish that Harper had recently entertained thoughts of sexual acts with her. While we agree with Harper that the statement does not constitute a threat, it was nevertheless admissible as it was probative on the issue of whether Harper would commit an act of sexual aggression against the prosecutrix.
The final assignment of error Harper urges upon this Court is that the trial court was wrong in failing to reduce his sentence or make it run concurrently with a separate judgment in Smith County. As will be recalled, the jury found Harper guilty but declined to fix his punishment at life imprisonment. Therefore, the judge ordered a presentence report by the parole officer of the district. Upon receiving that report, the judge noticed that in May of that year Harper had been sentenced in Smith County to serve a term of thirty years for another rape. The court also noted that mortality tables established Harper's life expectancy at 37.3 years. He was at the time 29 years old. The court then sentenced him to a term of thirty-five years in the state penitentiary. Prior to that sentencing the attorney for Harper stated:
"Your honor, I would just ask the court that although he has been convicted of the crime of forcible rape, to take into consideration he is presently serving a thirty year sentence out of Smith County, Mississippi, and, of course, any sentence imposed here would have to run consecutively to that sentence."
The defense filed a motion to reduce the sentence and argued that because the sentences were required to run consecutively and, because the court was required to sentence Harper to a term reasonably expected to be less than life, the court was required to consider the Smith County sentence in imposing the sentence for the Scott County crime.
Only five months before, the Legislature had amended § 99-19-21 Miss. Code Ann. (1972). We have previously held that a defendant must be sentenced under statutes in effect at the time of the alleged offense. Allen v. State, 440 So.2d 544 (Miss. 1984).
Prior to its amendment § 99-19-21 required that separate sentences be served consecutively unless the court expressly ordered they be served concurrently. In the instant case the trial court gave no indication that the sentences were to run concurrently and the defense readily admitted that they must run consecutively. Nonetheless there is no merit to Harper's assertion that his first sentence must be considered in arriving at a second sentence "reasonably calculated to be less than life."
For us to hold as Harper urges would create an unacceptable result. It is conceivable that the Court would be unable to sentence a defendant for crimes because he was already serving consecutive terms of what actuarial tables tell us is just short of a life imprisonment. By outliving the span of life predicted by the actuarial table, the *1042 defendant would go unpunished for the crimes the court was not permitted to sentence him to. The Scott County rape was an independent criminal act for which Harper may be punished independently. The crimes were totally unrelated to each other and the punishment imposed in the second case is not required to bear any relation to the first. Therefore, we find no merit to this assignment of error.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
ROY NOBLE LEE, P.J., not participating.
NOTES
[1] The name of the prosecutrix is of no relevance to this appeal.