NIMMONS, Judge.
The appellants, Olin W. Carroll and Joyce Carroll, his wife, appeal from a final judgment in favor of the defendant in a personal injury action arising out of an automobile accident in December 1983. We reverse and remand for a new trial because the trial court erred in denying the plaintiffs’ motion for mistrial by reason of an improper and prejudicial question by defense counsel during jury selection.[1]
Prior to trial, the appellee had admitted liability. The sole issue to be tried was damages, including whether the appellant had sustained a permanent injury. Mr. Carroll’s treating physician was Dr. Leo Flynn, an orthopedic surgeon, who testified in his deposition which was read at trial that Carroll had a 10-15% permanent impairment as a result of the accident.
During voir dire, the plaintiffs’ counsel read the names of witnesses who would be testifying and inquired as to whether any of the prospective jurors knew them. Two of the jurors indicated they knew Dr. Flynn — one had been seen professionally by Dr. Flynn and the other had had a social contact with him. Both said that they would not be influenced one way or the other by reason of their previous contacts. Plaintiffs’ counsel then asked the entire group, “Does anybody know of Dr. Flynn in any respect that would influence you one way or the other concerning his testimony?” There was no affirmative response and plaintiffs’ counsel went on to something else.
When defense counsel took his turn in questioning the prospective jurors, he asked if everyone reads the Pensacola News Journal and then asked, “Has anyone read any of the investigative reports about Dr. Flynn?” Whereupon plaintiffs’ counsel objected. At the bench conference, plaintiffs’ counsel moved for a mistrial. After hearing arguments, the trial court denied the motion. Then, defense counsel repeated the question and inquired further:
MR. HOOK [defense counsel]: Has anyone here read any investigative reports in the News Journal about Dr. Flynn? Okay, Mr. Lemaster, you raised your hand. Anyone else? Mr. Lemas-ter, could you come on up to the bench, please.
MR. GREEN [plaintiffs’ counsel]: Your Honor—
(At the bench
*348 MR. HOOK: Mr. Lemaster, you are an assistant school superintendent?
PROSPECTIVE JUROR: Retired.
MR. HOOK: I asked you a question whether you have read the investigative reports about Dr. Flynn. Did you read the entire series?
PROSPECTIVE JUROR: Most of them.
MR. HOOK: Okay. You also indicated in the questions by Mr. Green that you knew Dr. Flynn socially?
PROSPECTIVE JUROR: Well, when I say socially, ever had social contact with him, I do not know him socially. I have met him and have talked to him. We have common friends.
MR. HOOK: And I think Dr. Flynn did some work for the school system performing physicals for the football teams and things of that nature. Would that be how the contact would come about or would it all be socially?
PROSPECTIVE JUROR: He also performed some operation on some employees that I supervised, too.
MR. HOOK: Okay. Is there anything about those reports that would influence you one way or the other in giving more credibility to Dr. Flynn’s testimony than another doctor or giving less credibility?
PROSPECTIVE JUROR: I don’t think so. I realize that most of the reports were investigative reports were negative, and the question is his ability as a surgeon as well as his judgment in operations- that seemed to develop that he operated more frequently than other doctors.
MR. HOOK: Okay. I don’t have any other questions.
MR. GREEN: No questions.
THE COURT: Thank you.
Conclusion of bench conference.)
That concluded the inquiry into this subject with the prospective jurors inasmuch as Mr. Lemaster was apparently the only one who had read any of the “investigative reports” about Dr. Flynn.[2]
It is quite apparent from the record that the opinion testimony of the medical experts was of critical importance in this case. On the one hand, Dr. Flynn, Mr. Carroll’s treating physician since October 1984, opined that Carroll had a permanent impairment as a result of the accident, and the testimony of Dr. Whitter, an internist, tended to corroborate Dr. Flynn’s opinion. On the other hand, Dr. Hooper, an orthopedic surgeon who conducted an independent medical examination, opined that Carroll was malingering.
It is undisputed in this case that, but for the improper question propounded by the defense counsel during voir dire, the jury would never have learned that the plaintiffs’ principal expert was the subject of an “investigation” and a series of reports published in the local newspaper. It is interesting to note that none of the 6 jurors who were empaneled to try the case appeared to have had any familiarity with any of the investigative reports. However, they all became aware of the existence of the investigation and reports as a consequence of defense counsel’s question.
Although we have little information regarding the specifics of the investigation, it is evident from what appears in the record that the investigative reports were anything but laudatory of Dr. Flynn. It is, therefore, difficult to understand why defense counsel felt the need or justification to bring up this subject with the jurors, particularly in the manner in which it was done. The end result was the creation of a cloud over the credibility of a key witness for the plaintiffs. The damage was compounded by the trial court’s overruling of *349 plaintiffs’ timely objection and allowing defense counsel to repeat his improper question, the effect of which was to reinforce in the jurors’ minds that Dr. Flynn had been investigated and was the subject of investigative reports in the newspaper. This court has said:
The trial judge has a duty to so direct the course of counsel’s voir dire examination that the minds of the prospective jurors may not be infiltrated with ideas having no proper relation to the issue to be determined by them.
Holiday v. Holbrook, 168 So.2d 752, 753 (Fla. 1st DCA 1964). See also Ryan v. Noble, 95 Fla. 830, 116 So. 766, 769 (1928); 33 Fla.Jur.2d Juries § 65, at p. 449.
We recognize that the extent to which counsel is allowed to go in examining prospective jurors as to their qualifications is subject to the sound discretion of the court, the exercise of which will not be disturbed unless clearly abused. Mizell v. New Kingsley Beach, Inc., 122 So.2d 225 (Fla. 1st DCA 1960); 33 Fla.Jur.2d Juries § 65, at p. 448. However, there can be little doubt that there was clear abuse in this case. And it is only reasonable to assume that the jurors’ views as to the credibility of Dr. Flynn were adversely affected by their having been improperly advised of the above otherwise inadmissible information. We must therefore reverse and remand for a new trial on Issue I.
As to Issue II, we agree with appellants that it was error for the trial court to allow the letter of Michael Kerrigan to Dr. Hooper to be read into evidence by Dr. Hooper by way of the latter’s deposition. However, the error was harmless because Dr. Hooper testified in his deposition, without objection, that he had performed examinations for Kerrigan’s law firm in the past. This was the substance of the objectionable part in the above letter and since the objectionable part was otherwise established through Hooper’s testimony, we regard the reading of the letter harmless.
With respect to Issue III, wherein appellants complain of defense counsel’s interjection of matters outside the record, we agree with appellants that defense counsel improperly commented to the jury regarding his having obtained certain records concerning a previous accident. We also agree with appellants’ contention that defense counsel’s comments, during closing argument, expressing his personal belief regarding the value of appellants’ claim were clearly improper, particularly coming on the heels of the trial court’s having just sustained an objection to a very similar comment. Whether these various improper comments by defense counsel would entitle appellants to a new trial need not be decided in view of our- disposition of Issue I.
REVERSED and REMANDED for new trial.
SMITH and ALLEN, JJ., concur.

. Although plaintiffs’ counsel sought a “mistrial," the relief which he was seeking was the disqualification of the entire jury venire. We so construe his motion.

. We note the jury selection procedure which was followed in this case. A panel of 20 prospective jurors was called into the courtroom. After being placed under oath, the judge made introductory remarks and asked a number of preliminary questions. He then turned the questioning over to the attorneys who addressed the entire group. After examination by counsel and an off-the-record bench conference, the court called 6 of the 20 into the jury box. The judge inquired of counsel as to whether they wished to excuse any of the prospective jurors. Both attorneys declined and the 6 were sworn in. We would also note that Mr. Lemaster was not one of the 6 chosen.