703 So.2d 1143 (1997)
Bernard HOOPER, Appellant,
v.
STATE of Florida, Appellee.
No. 96-3068.
District Court of Appeal of Florida, Fourth District.
December 10, 1997.
Rehearing, Certification of Conflict and Question Denied January 20, 1998.
*1144 Richard L. Jorandby, Public Defender, and Joseph R. Chloupek, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Jeanine M. Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.
KLEIN, Judge.
Appellant was convicted of robbery with a firearm, theft of a motor vehicle, and aggravated fleeing and eluding. We find that the court's use of a new jury instruction on principals, in which the elements were changed after the commission of this crime, constituted an ex post facto violation, but was harmless error.
Briefly, the facts of the case reflected that the victim was accosted by a man with a gun who took her rings and purse and then fled in a vehicle being driven by the appellant. A police chase ensued, appellant's vehicle hit a concrete barrier, and appellant was captured while attempting to flee with the victim's jewelry. Appellant gave a taped statement to a Hollywood police officer admitting that he had been the driver for two men who intended to steal purses, had witnessed the robbery of the victim, and had received the victim's property.
Appellant argues that after this robbery took place, the Florida Supreme Court made a substantive change in the standard jury instruction on principals, making it easier for the state to obtain a conviction, and that the trial court's use of the new instruction was an ex post facto law violation. The new instruction, appellant contends, functionally changed the facts that the state must prove to establish that a defendant is a principal.
At the time this crime occurred, the Florida Standard Jury Instruction on Principals stated:
If two or more persons help each other [commit] [attempt to commit] a crime and the defendant is one of them, the defendant is a principal and must be treated as if [he][she] had done all the things the other person or persons did if the defendant: (1) knew what was going to happen (2) intended to participate actively or by sharing in an expected benefit and, (3) actually did something by which [he][she] intended to help [commit] [attempt to commit] the crime.
Standard Jury Instructions in Criminal Cases, 665 So.2d 212, 214 (Fla.1995).
After this crime occurred, the instruction was amended so that it now states:
If the defendant helped another person or persons [commit] [attempt to commit] a crime, the defendant is a principal and must be treated as if [he][she] had done all the things the other person or persons did if: (1) the defendant had a conscious intent that the criminal act be done, and (2) the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist or advise the other person or persons to actually [commit] [attempt to commit] the crime.
Standard Jury Instructions, 665 So.2d at 214.
The committee on standard jury instructions reported to the supreme court that the old instruction contained requirements that the defendant "intend to participate actively or by sharing in an expected benefit" and that the defendant "knew what was going to happen," but that the statute defining principals, section 777.011, Florida Statutes, did not require those elements. They were accordingly eliminated. Id. at 214.
In McGahee v. State, 561 So.2d 333 (Fla. 1st DCA 1990) defendant was tried in 1989 for having performed oral sex on an eight year old victim in 1971 and 1972. He was charged with rape of a female child under age ten; however, the applicable rape statute was not specific, prohibiting carnal knowledge and abuse, but not defining it. Court *1145 decisions in effect at the time of the crime, which defendant had admitted, defined rape under the statute as requiring penetration of the female sex organ by the male sex organ.
By the time McGahee was tried in 1989 the courts had broadened the interpretation of the language in the 1971 statute so that it would include the oral sex performed by McGahee. At the time McGahee committed his crime, it was not punishable under the rape statute, but as a crime against nature.
In holding that the jury instruction defining rape as including oral sex was a violation of the ex post facto provisions of the Florida and United States Constitutions, the first district relied on Bouie v. Columbia, 378 U.S. 347, 353-54, 84 S.Ct. 1697, 1702-03, 12 L.Ed.2d 894 (1964), in which the United States Supreme Court held:
[A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law.... If a judicial construction of a criminal statute is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," it must not be given retroactive effect.
The Supreme Court also held that when an unforeseeable court construction of a criminal statute is applied retroactively, the defendant has been deprived of due process because of the lack of warning that the conduct is criminal. Bouie at 354-55, 84 S.Ct. at 1702-03.
The state's argument that the statute has not changed misses the point. The jurors in this case were not instructed as to the contents of the statute. The only information they were given about the statute on principals was through the instruction. When our supreme court changed this jury instruction by deleting elements which must be proved to establish guilt, it altered the functional definition of the crime, even though the legislature had not changed the statute.
Nor does it make any difference whether changes in jury instructions are considered procedural. As our supreme court recognized in Dugger v. Williams, 593 So.2d 180, 181 (Fla.1991):
[I]t is too simplistic to say that an ex post facto violation can occur only with regard to substantive law, not procedural law. Clearly, some procedural matters have a substantive effect.
The use of the new instruction in this case, which enabled the state to establish guilt without the two elements contained in the prior instruction, was an ex post facto violation under McGahee and Bouie. It does not necessarily require a new trial, however, because even constitutional errors are subject to a harmless error analysis, State v. DiGuilio, 491 So.2d 1129, 1134 (Fla.1986).
In this case the state presented extensive evidence, and its primary position was, that appellant was a substantial participant in the crimes, not merely a principal. This evidence included appellant's confession to having prior knowledge of the intended crime, his having admitted that he had received some of the property stolen from the victim, and his admission that he was driving the get-away car. In addition the state, in closing argument, utilized the elements of the old principal instruction, not the new one. Besides appellant's confession, there was other overwhelming evidence of his guilt as an active participant, not as a principal, which leads us to conclude that the use of the new instruction was harmless beyond a reasonable doubt.
Appellant also contends that the trial court erred in not allowing him to voir dire jurors about their knowledge of news reports involving corruption in the Hollywood police department. Defense counsel alleged that members of the Hollywood police department, including the officer who took appellant's confession, had been untruthful in the investigation, and that this was therefore a proper subject of voir dire.
Appellant makes no argument as to how general corruption in the police department could possibly have had any relevance in this case. The cases on which he relies, Lavado v. State, 492 So.2d 1322 (Fla.1986); Perry v. State, 675 So.2d 976 (Fla. 4th DCA 1996), rev. denied, 684 So.2d 1352 (Fla.1996), were cases in which the trial courts erred in refusing to allow voir dire about broad legal *1146 concepts, not, as was the case here, an attempt to attack the credibility of a witness with information which was clearly inadmissible in evidence. What the first district said about this type of thing in Holiday v. Holbrook, 168 So.2d 752, 753 (Fla. 1st DCA 1964) is worth repeating:
The trial judge has a duty to so direct the course of counsel's voir dire examination that the minds of the prospective jurors may not be infiltrated with ideas having no proper relation to the issue to be determined by them.
See also Carroll v. Dodsworth, 565 So.2d 346 (Fla. 1st DCA 1990) (trial court should have granted mistrial where defense counsel asked prospective jurors if they had read newspaper investigative reports about plaintiff's surgeon).
Because the state cannot appeal adverse verdicts, defense counsel in criminal cases do not have to worry about reversal if they inject irrelevant matters which are prejudicial to the state. We remind counsel, however, that they are ethically prohibited from doing so by Rule 4-3.4(e), R.Regulating Fla.Bar, which provides that a lawyer shall not "in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence."
We therefore affirm.
SHAHOOD, J., concurs.
FARMER, J., concurs specially with opinion.
FARMER, Judge, concurring in result.
I agree with Judge Klein that the conviction must be affirmed. My conclusion is not based on his harmless error analysis, however, but instead on a rejection of defendant's ex post facto argument. In short, I do not agree that the reformulation of the standard jury instruction on the "principals" statute amounts to an ex post facto violation under the circumstances involved here.[1]
The majority principally relies on McGahee v. State, 561 So.2d 333 (Fla. 1st DCA 1990) to find an ex post facto violation. The circumstances in which the issue arose in that case are instructive. In 1988 the defendant was charged with rape under section 794.01 for engaging in cunnilingus and fellatio during 1971 and 1972 with an 8-year old child. From 1969 through 1972, section 794.01 was limited to sexual intercourse only, however, and required penetration of the female sex organ with the male organ. See Askew v. State, 118 So.2d 219 (Fla.1960) (interpreting same statutory text as requiring penetration of the female sex organ by the male organ with force). Correspondingly, the standard jury instruction applicable in 1972 for section 794.01 instructed that penetration of the female sex organ by the male organ was required. Yet in McGahee's 1988 trial, the judge told the jury that section 794.01 would be violated if "there was actual penetration of the victim's bodily orifice, whether oral by the defendant's penis or vaginal by the defendant's tongue."
Moreover, as the McGahee court itself noted, in Brinson v. State, 278 So.2d 317 (Fla. 1st DCA 1973), the first district had construed section 794.01 to extend to sodomy but the supreme court had quickly overruled its decision. See Brinson v. State, 278 So.2d 317 (Fla. 1st DCA 1973). McGahee, however, was disapproved by the supreme court in Wilson v. State, 288 So.2d 480 (Fla.1974). The Wilson court expressly relied on Bouie v. Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) [Bouie ], in holding the first district's "radical new interpretation" of section 794.01 in Brinson as an ex post facto attempt to criminalize acts that, when committed, were not criminal under the statute.[2]
It is important also to look closely at the actual holding in Bouie. For purposes of ex post facto violations, the Court there drew a distinction between a statute that is vague *1147 and unclear, and one that is narrow and specific. As the Court explained:
"When a statute on its face is vague or overbroad, it at least gives a potential defendant some notice, by virtue of this very characteristic, that a question may arise as to its coverage, and that it may be held to cover his contemplated conduct. When a statute on its face is narrow and precise, however, it lulls the potential defendant into a false sense of security, giving him no reason even to suspect that conduct clearly outside the scope of the statute as written will be retroactively brought within it by an act of judicial construction. If the Fourteenth Amendment is violated when a person is required `to speculate as to the meaning of penal statutes,' ... or to `guess at [the statute's] meaning and differ as to its application,' ... the violation is that much greater when, because the uncertainty as to the statute's meaning is itself not revealed until the court's decision, a person is not even afforded an opportunity to engage in such speculation before committing the act in question.
"There can be no doubt that a deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language.... `[J]udicial enlargement of a criminal act by interpretation is at war with a fundamental concept of the common law that crimes must be defined with appropriate definiteness.' Even where vague statutes are concerned, it has been pointed out that the vice in such an enactment cannot `be cured in a given case by a construction in that very case placing valid limits on the statute,' for `the objection of vagueness is two-fold: inadequate guidance to the individual whose conduct is regulated, and inadequate guidance to the triers of fact. The former objection could not be cured retrospectively by a ruling either of the trial court or the appellate court, though it might be cured for the future by an authoritative judicial gloss....'
"If this view is valid in the case of a judicial construction which adds a `clarifying gloss' to a vague statute ... making it narrower or more definite than its language indicates, it must be a fortiori so where the construction unexpectedly broadens a statute which on its face had been definite and precise. Indeed, an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Art. I, § 10, of the Constitution forbids. An ex post facto law has been defined by this Court as one `that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action,' or `that aggravates a crime, or makes it greater than it was, when committed.' ... If a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction.... The fundamental principle that `the required criminal law must have existed when the conduct in issue occurred' ... must apply to bar retroactive criminal prohibitions emanating from courts as well as from legislatures.
. . . . .
"When a state court overrules a consistent line of procedural decisions with the retroactive effect of denying a litigant a hearing in a pending case, it thereby deprives him of due process of law `in its primary sense of an opportunity to be heard and to defend (his) substantive right.' ... When a similarly unforeseeable state-court construction of a criminal statute is applied retroactively to subject a person to criminal liability for past conduct, the effect is to deprive him of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime.... [I]f the result above stated were attained by an exercise of the state's legislative power, the transgression of the due process clause of the Fourteenth Amendment would be obvious,' and `The violation is none the less clear when that result is accomplished by the state judiciary in the course of construing an otherwise valid ... state statute." [e.s., c.o.]
378 U.S. at 351-355, 84 S.Ct. at 1701-1703.
In the case we face today, however, it is obvious that the statute itself on which the *1148 conviction was obtained has not been changed in any respect. It is the same both before and after the revision of the standard jury instruction (SJI).[3] The only change asserted by the defendant is in the SJI. But a standardized jury instruction is not the equivalent of a statute; it is rather a mere formulaic device for trial judges to instruct jurors in a uniform way throughout the state as to the meaning of the statute. In individual cases, the formula may and should be varied to suit the particular facts and circumstances.
Moreover, it should be understood that the new SJI was not the result of any new judicial construction of a statute deemed to be impermissibly vague; nor did the new SJI arise from a construction designed to make it easier for the state to obtain convictions under the principals statute. The new SJI was, as explained by the supreme court, purely an improved explanation of the statute, offered at the behest of the Committee on Standard Jury Instructions:
"The committee recommends an amendment to instruction 3.01, entitled `Principals,' based on section 777.011, Florida Statutes (1993) (page 32a of the manual). The committee contends that the current jury instruction is both insufficient and erroneous. It is the feeling of the committee that the word `helps' is not sufficiently specific as to some of the ways in which one can be considered a principal. In addition, the current instruction adds a requirement that the defendant `intend to participate actively or by sharing in an expected benefit.' This requirement is found neither in the statute nor in applicable appellate decisions. The intent required is only that the offense be committed. Finally, the committee believes that the requirement that the defendant `knew what was going to happen' requires an element of prescience not generally required for criminal intent. The committee believes that the proposed instruction corrects those current errors in the instruction." [e.s.]
Standard Jury Instructions in Criminal Cases, 665 So.2d 212 (Fla.1995). Thus the intended purpose of the SJI was to add some specific examples in explaining the ways under which a person may be deemed a "principal" and, at the same time, to remove any suggestion that the defendant must actively participate in the crime or share in an expected benefit.
Trial judges are admonished in the drafting committee's note on the use of the SJI that, as I earlier noted, "[i]ndividual judges may, of course, modify or edit the text of the instructions as the judge deems the circumstances to require." But when the legislature amends a statute, or the supreme court construes a statute in the ways suggested by the Court in Bouie, trial judges are not similarly free to "modify or edit the text of the instructions as the judge deems the circumstances to require." In the Bouie examples, the judge must instruct the jury as the legislature or court has directed.
In this case, it is clear that there is no new construction of a settled statute involved. Nor is there an attempt to broaden a previously drawn, narrow statute to new crimes. And there is not even an attempt to clarify a statute previously thought to have been vague or overbroad. The "principals" statute stands as constant today as it was yesterday. Plainly the only issue is whether the tinkering by the drafting committee of the standard jury instructions for criminal cases to "improve" the usual "principals" instruction is the kind of ex post facto criminalization condemned by the Court in Bouie. I do not think it is.
Judge Klein has accurately set out the text of both the old and new versions of the SJI. In the old formulation, the jury was essentially told that a defendant is a principal in the commission of a crime when the defendant (a) "knew what was going to happen;" (b) "intended to participate actively;" and (c) "actually did something ... intended to help commit the crime." In the new version, a *1149 defendant is a principal if the defendant (a) "had a conscious intent that the criminal act be done;" and (b) "did something ... intended to ... and did incite, cause, encourage, assist or advise the other person ... to actually commit the crime." As I read both the old and the new SJI, the new merely eliminated gratuitous additions in the old explanation of the statute, but both correctly explain the meaning of statutory text. Frankly, I am unable to perceive any practical tilt in favor of the state in this change. At bottom, both versions simply tell the jury that the defendant must intend to help another person actually commit a crime, and then must have done something to aid in the other's commission of the crime.
To give this kind of ordinary tinkering with standard jury instructions ex post facto treatment is to broaden the constitutional imperative beyond its intended scope. The fact that juries in different cases may be instructed differently for the same crime is not, to my mind, an ex post facto violation. It may be unstandard, it may well be non-uniform, it may even be unfair to one of the parties in a given case.[4] But it is not the kind of blind siding against the defendant, or burden-easing in favor of the state, condemned by the ex post facto provisions of both constitutions.
NOTES
[1] See Art. I, § 10, Fla. Const. ("No ... ex post facto ... law shall be passed."); Art. I, § 10, U.S. Const. ("No State shall ... pass any ... ex post facto Law....").
[2] The McGahee court had also pointed out that in 1973 the legislature amended section 794.01 to extend it to sodomy and the supreme court found the amended statute not unconstitutionally vague in Washington v. State, 302 So.2d 401 (Fla.1974).
[3] § 777.011, Fla. Stat. (1995) ("Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he is or is not actually or constructively present at the commission of such offense.").
[4] Obviously I perceive no unfairness to the defendant in this case.